**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                                                **Criminal No. 5:14-CR-19-01**
                                                                     Judge Bailey

**GLENN A. MILLER**,

      Defendant.

**ORDER DENYING MOTION TO DISMISS FOR
<u>BREACH OF NON-PROSECUTION AGREEMENT</u>**

Pending before this Court is Defendant Glenn A. Miller's Motion to Dismiss for Breach of Non-Prosecution Agreement [Doc. 22] and supporting memorandum [Doc. 23]. In the Motion, defendant Miller contends that he entered into a cooperation agreement with certain investigating officers containing a non-prosecution agreement, that he fully complied with the agreement, and that, as a result, the Government is prohibited from proceeding with his prosecution in this Court.

The Government filed a response on May 2, 2014 [Doc. 24], and Magistrate Judge Seibert held an evidentiary hearing on July 24, 2014 [Doc. 68]. On August 5, 2014, Magistrate Judge Seibert issued his Report and Recommendation Concerning Defendant's Motion to Dismiss for Breach of Non-Prosecution Agreement [Doc. 75], which recommended denial of the Motion. Thereafter, on August 12, 2014, defendant Miller filed Defendant Glenn A. Miller's Objection to Report and Recommendation Concerning Defendant's Motion to Dismiss for Breach of Non-prosecution Agreement [Doc 75] [Doc.

82]. On August 13, 2014, the Government filed its response [Doc. 86].

Having reviewed all of the above pleadings and memoranda, as well as the transcript of the July 24, 2014, hearing, this Motion is now ripe for decision.

In his Report & Recommendation, Judge Seibert found: (1) that the investigating officers, City of Moundsville Police Officers Keith McCallen and Mike Baker, both members of the Marshall County Drug Task Force, promised defendant he would not be prosecuted if he cooperated with their drug investigation; (2) that it was unclear whether the defendant breached the agreement by continuing to sell drugs; and (3) it was unnecessary to decide the prior issue because there is no evidence that the officers had the authority to bind the United States Attorney's Office.

This Court agrees with the Magistrate Judge that there is no evidence that the investigating officers had the authority to bind the Government. In ***United States v. Juvenile Male***, 1988 WL 138688 (4th Cir. December 20, 1988) (unpublished), the Fourth Circuit held:

> The United States government generally is not bound by its agent's promise to a criminal defendant unless the agent acts with the government's authority. *See, e.g.,* ***United States v. Hudson,*** 609 F.2d 1326, 1329 (9th Cir. 1979); *cf.* ***United States v. Williams,*** 780 F.2d 802, 803 (9th Cir. 1986) ("In general, a promise made by a government employee other than the United States Attorney to recommend dismissal of an indictment cannot bind the United States Attorney.").

1988 WL 138688 at *2.

In *United States v. Blackmon*, 2005 WL 1719106 (M.D. Md. July 21, 2005), Judge Beaty stated as follows:

> However, even assuming *arguendo* that the Louisiana State Police and the DEA had entered into a non-prosecution agreement with Blackmon, her assertion of transactional immunity would still fail for want of the United States Attorney's involvement. *See Williams,* 780 F.2d at 803 ("In general, a promise made by a government employee other than the United States Attorney to recommend dismissal of an indictment cannot bind the United States Attorney.") Although not binding on this Court, the Fourth Circuit held persuasively in *United States v. Juvenile Male* that "[t]he United States government generally is not bound by its agent's promise to a criminal defendant unless the agent acts with the government's authority." *United States v. Juvenile Male,* No. 88–5575, 1988 WL 138688, at *2 (4th Cir. Dec. 20, 1988). In *Juvenile Male,* Secret Service agents arrested a juvenile in connection with the discovery of a counterfeit currency plant. *Id.* at *1. After receiving a *Miranda* warning, the juvenile made two statements implicating himself in the counterfeiting scheme. *Id.* After he was charged, the juvenile's counsel informed the United States Attorney's Office that the juvenile had been promised immunity by the Secret Service agents in exchange for providing assistance. *Id.* An investigation by the United States Attorney's Office revealed that the agents had in fact made such a promise; however, the agents "never consulted with or received authorization from the United

States Attorney's Office." *Id.* On appeal, the juvenile contended that the agents "had apparent authority to offer immunity in exchange for his cooperation and that such an offer by government agents with apparent authority is binding on the United States Attorney and the courts." *Id.* After citing the general rule that the United States cannot be bound by an agent lacking authority, the court went on to note in dicta:

> Circumstances exist, no doubt, whereby the interaction of one government agency with representatives of another government agency could clothe the latter with the authority to bind the former to an immunity agreement. Considering such a possible circumstance in this case, however, is not necessary. The United States Attorney's Office simply did nothing that could be construed as giving the Secret Service agents either actual or apparent authority to enter into an immunity agreement with the juvenile.

*Id.*

Thus, according to the reasoning of *Juvenile Male,* it is the United States Attorney's actions in immunity negotiations that are the focal point in determining whether a party other than the United States Attorney can bind that office. The weight of authority appears to support this view that the United States Attorney must have done something to clothe representations of another government agency with authority to engage in handling

negotiations as to transactional immunity. *See **United States v. Fuzer**,* 18 F.3d 517, 520 (7th Cir. 1994) (finding that evidence would be necessary indicating that the Bureau of Alcohol, Tobacco, and Firearms agents had been authorized to offer immunity in order to bind the United States Attorney); ***Williams**,* 780 F.2d at 803 (discussing that generally only a United States Attorney can bind the Government).

2005 WL 1719106 at *6 (footnote omitted).

In ***United States v. Flemmi***, 225 F.3d 78 (1st Cir. 2000), the First Circuit joined those courts that have held that only the United States Attorney may grant immunity from prosecution, stating:

> The short of it is that the power to prosecute plainly includes the power not to prosecute (and, thus, the power to grant use immunity), whereas the power to investigate does not necessarily encompass (or even reasonably imply) the power to grant use immunity. Because the more specific source of authority must prevail when such a clash occurs, United States Attorneys' power to make promises of immunity trumps the FBI's more generalized claim. The end result brings coherence to the law: just as applications for formal grants of use immunity are the exclusive prerogative of United States Attorneys under 18 U.S.C. § 6002, *see **United States v. Graham**,* 548 F.2d 1302, 1315 (8th Cir. 1977), so too are informal grants of use immunity under current conditions.
>
> Not surprisingly, the case law supports this result and, at the same

time, contradicts the district court's premise that officials having lesser authority over prosecutions than United States Attorneys, such as FBI agents, may bind the United States either to dismiss an indictment or to refrain from prosecution. *See, e.g.,* [*United States v.*] *Cordova–Perez,* 65 F.3d at 1554 [(9th Cir. 1995)] (stating that INS agent who made a "no prosecution" promise could not bind the United States); *United States v. Fuzer,* 18 F.3d 517, 520–21 (7th Cir. 1994) (holding that ATF agents lacked authority to promise that defendant would not be prosecuted); *[United States v. ] Streebing,* 987 F.2d at 373 [(6th Cir. 1993)] (finding that FBI agent "lacked any actual or apparent authority to make the alleged promise not to prosecute"); *United States v. Kettering,* 861 F.2d 675, 676 (11th Cir. 1988) (holding that a DEA agent lacked authority to guarantee immunity); *In re Corrugated Container Antitrust Litig.,* 662 F.2d 875, 888 (D.C. Cir. 1981) (holding there is "no authority for ruling that oral promises of immunity by an investigator [FBI agent], not in accord with statutory requirements, bind all federal ... prosecutors"); *United States v. Hudson,* 609 F.2d 1326, 1329 (9th Cir. 1979) (holding that Secret Service Agent's promise to drop charges did not bind the United States); *Dresser Indus.* [*v. United States*], 596 F.2d at 1237 [(5th Cir. 1979)] (holding that "the SEC's agents lacked actual authority to contractually limit the prosecutorial function of the Department of Justice, [so] any such agreement ... would be unenforceable"). This line of cases makes intuitive sense:

> If the rule were otherwise, a minor government functionary hidden in the recesses of an obscure department would have the power to prevent the prosecution of a most heinous criminal simply by promising immunity in return for the performance of some act which might benefit his department. Such a result could not be countenanced.
>
> **Dresser Indus.,** 596 F.2d at 1236–37.
>
> Thus, the clear weight of authority buttresses the government's position that a promise of use immunity made independently by an FBI agent exceeds the scope of his actual authority (and is, therefore, unenforceable).

225 F.3d at 87-88.

In this case, there is no evidence that the United States Attorney's Office approved, ratified, or even knew about the non-prosecution agreement. In fact, the evidence is to the contrary.

At the July 24 hearing, Deputy Sheriff James Matthews, the coordinator for the Marshall County Drug Task Force testified as follows:

Q. As part of your investigation, did you bring this case to the U.S. Attorney's Office to see if we would indict it?

A. Yes.

Q. Was the investigation still going on or was it over when you approached the U.S. Attorney's Office about this case?

A. Ongoing.

Q. At any point did you ask me or anybody else in the U.S. Attorney's Office whether

7

we would offer federal immunity to Mr. Miller?

A. No.

Q. Do you know of anybody who at any point, at any time, approached me or anybody else in the U.S. Attorney's Office to ask if we would authorize federal immunity for Mr. Miller?

A. No.

[Doc. 70, pp. 42-43].

At the hearing, defense counsel could have asked either of the investigators whether they had any discussions with the United States Attorney's Office concerning the non-prosecution agreement. No such questions were asked.

Rather, the defense refers to a press release dated February 5, 2014, concerning the Marshall County Drug Task Force activities asking this Court to infer that the United States Attorney was aware of and approved a non-prosecution agreement which occurred some 14 months before the press release. This Court declines to make such an attenuated leap of faith.

In the absence of any credible evidence of U.S. Attorney approval, this Court finds that the non-prosecution agreement has no binding effect on the Government's case.

For the reasons stated above, Defendant Glenn A. Miller's Motion to Dismiss for Breach of Non-Prosecution Agreement **[Doc. 22]** is **DENIED**, the Report and Recommendation Concerning Defendant's Motion to Dismiss for Breach of Non-Prosecution Agreement [**Doc. 75**] is hereby **ADOPTED**, and Defendant Glenn A. Miller's Objection to Report and Recommendation Concerning Defendant's Motion to Dismiss for

Breach of Non-prosecution Agreement [Doc 75] **[Doc. 82]** is **OVERRULED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** August 18, 2014.

*JOHN PRESTON BAILEY*
*UNITED STATES DISTRICT JUDGE*